UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 13-48710 |
| ROBERT BRIAN BRANCH, *pro se*, | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |
| _____/ | |
| ROBERT BRIAN BRANCH, *pro se*, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 14-4654 |
| 30TH DISTRICT COURT CITY OF HIGHLAND PARK, | |
| Defendant. | |
| _____/ | |

**OPINION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

In this adversary proceeding, Plaintiff Robert Brian Branch (the "Debtor") is a Chapter 7 bankruptcy debtor who obtained a discharge. He seeks a judgment against Defendant, the 30th District Court for the City of Highland Park ("Defendant" or "30th District Court"), in the amount of $10,000.00, based on Defendant's alleged violations of the automatic stay and the discharge injunction.

This case is before the Court on Defendant's motion for summary judgment,[1] seeking judgment on all claims in Debtor's first amended complaint, and an award of costs and attorney fees. Debtor filed a response objecting to the Motion, and Defendant filed a reply brief. The

---

[1] Docket # 29, the "Motion."

Court concludes that a hearing on the Motion is not necessary. For the reasons stated below, the Court will grant the Motion, to the extent it seeks judgment on all claims in Debtor's first amended complaint, but will deny the Motion to the extent it seeks costs and attorney fees.

## II. Facts

The material facts are not in dispute. Sometime before March 27, 2013, the Michigan Secretary of State ("SOS") suspended Debtor's driver's license. On March 27, 2013, Debtor received a traffic citation in the City of Highland Park, Michigan (the "Citation"),[2] for three offenses: disregarding a red light; driving while his driver's license was suspended (which is a criminal misdemeanor under Michigan law); and having no proof of insurance. The Citation required Debtor to appear at the 30th District Court "within 10 days."[3] Debtor failed to appear as required by the Citation.

On April 29, 2013, Debtor filed a voluntary bankruptcy petition under Chapter 7.[4] Debtor listed Defendant as a creditor in his Schedule E, based on numerous traffic citations issued to Debtor in 2012 in the City of Highland Park.[5]

On June 20, 2013, Defendant issued a warrant for Debtor's arrest, due to his failure to appear at the 30th District Court as required by the Citation.[6] On August 29, 2013, Defendant sent Debtor a letter, acknowledging receipt of papers indicating that Debtor had filed a Chapter 7

---

[2] *See* Ex. A of Def.'s Br. in Supp. of Mot. for Summ. J.

[3] *See id.*

[4] Docket # 1 in Case No. 13-48710.

[5] *Id.* at 16-17.

[6] *See* Ex. B of Def.'s Br. in Supp. of Mot. for Summ. J.

2

petition and listed Defendant as a creditor. Defendant's letter also stated that: (1) Debtor "may not discharge traffic tickets due to [11 U.S.C. § 523(a)(7)], which specifically states that fines and penalties owed to and for the benefit of governmental units are non-dischargeable;" (2) there was an outstanding criminal warrant for Debtor's arrest, for his "failure to appear to answer the charge of driving with a suspended license[;]" and (3) Debtor had been "defaulted on the civil infractions of 'disregarding a red light' and 'no proof of insurance.'"[7] The letter further stated that Debtor could "walk in on any Monday or Wednesday afternoon at 1:45 pm to request that [the criminal warrant] be set aside and request a hearing."[8]

On October 8, 2013, Debtor received a discharge under Chapter 7.[9]

On July 1, 2014, Debtor filed this adversary proceeding against Defendant, seeking $10,000.00 in damages for alleged violations by the Defendant of the automatic stay. Debtor later amended his complaint, on August 22, 2014.[10] In Debtor's original complaint and his first amended complaint, Debtor stated that he is "not challenging dischargeability of this particular debt just as [he] did not challenge the [dischargeability] of other debts included in [the] bankruptcy from Detroit's 36th District Court, as well as the State of Michigan's fines/fees," but rather is only complaining about Defendant's failure to cease all actions against him after the

---

[7] *See* Ex. C of Def.'s Br. in Supp. of Mot. for Summ. J.

[8] *See id.*

[9] Docket # 23 in Case No. 13-48710.

[10] *See* Docket ## 1, 15. Although Debtor alleges in his first amended complaint that Defendant's actions violated the automatic stay, Debtor does not explicitly allege that any of Defendant's actions violated the discharge injunction. Nevertheless, the Court construes the first amended complaint as seeking relief based also on Defendant's purported violation of the discharge injunction, because Debtor seeks a finding of contempt against Defendant and damages and some of the actions and/or omissions for which Defendant seeks damages occurred after Debtor received a discharge in October 2013.

3

filing of his bankruptcy petition.

In Debtor's first amended complaint, Debtor alleged that post-petition, and with knowledge of Debtor's bankruptcy filing, Defendant issued a warrant for Debtor's arrest based on his failure to appear for an arraignment on the Citation, and that to date, Defendant has failed to cancel the arrest warrant.[11]

Debtor further alleges that post-petition, Defendant "again suspended" his driver's license, which the SOS had allegedly reinstated after Debtor informed it of his bankruptcy filing.[12] Debtor argues that these acts and omissions by Defendant violated the automatic stay and/or the discharge injunction and have caused him damages.[13]

Debtor alleges that Defendant's issuance of the warrant for his arrest, its failure to cancel the arrest warrant after Debtor filed for bankruptcy, and its actions leading to the suspension of his driver's license were in retaliation for Debtor filing his bankruptcy petition.[14] Debtor requests that the Court hold Defendant in contempt and award him $10,000.00 in damages.[15]

On November 14, 2014, without leave of court and without Defendant's consent, Debtor filed a second amended complaint.[16] In Debtor's second amended complaint, Debtor stated that

---

[11] *See* Pl.'s Am. Compl. (Docket # 15) at pdf. p. 3.

[12] *See id.*

[13] *See id.* at pdf. pp. 3-4. In his amended complaint, Debtor describes the damages that he allegedly suffered. *See id.* However, because the Court concludes that Defendant did not violate the automatic stay or the discharge injunction, *see infra* Parts IV.C-IV.D, the Debtor is not entitled to any damages and it is thus unnecessary to discuss the particular damages Debtor alleges.

[14] Pl.'s Objection to Def.'s Mot. for Summ. J. (Docket # 32) at pdf. p. 2.

[15] *Id.* at pdf. p. 4.

[16] Docket # 31.

4

he is "now challenging dischargeability of the three debts" in the Citation.[17] Defendant objects to Debtor's filing of the second amended complaint.[18] Defendant argues that such amended complaint must be stricken because Debtor filed it without leave of court; and Defendant never gave its consent to the Debtor to file it.[19]

## III. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and (b)(1), and L.R. 83.50(a) (E.D. Mich.). This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (O). It also is a core proceeding because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *id.*, namely, 11 U.S.C. §§ 362, 523, and 524. And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *Id.*

## IV. Discussion

### A. The operative complaint and the dischargeability issue

As an initial matter, the Court must decide which complaint is the operative complaint.

---

[17] *Id.* at 2.

[18] Docket # 34 ("Reply to Plaintiff Robert Branch's Objection to Defendant['s] Motion for Summary Judgment," the "Reply").

[19] *Id.* at 2.

5

The Court construes the *pro se* Debtor's filing of the second amended complaint as an informal motion for leave to file the proposed second amended complaint, and the Defendant's Reply as an objection to the motion. The Court concludes that a hearing on such motion is unnecessary. The motion must be denied and the second amended complaint must be stricken from the record, because allowing that amendment to Debtor's complaint would be futile.

Fed.R.Civ.P. 15, made applicable to adversary proceedings by Fed.R.Bankr.P. 7015, provides:

> (a) Amendments Before Trial.
>
> > (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
> >
> > > (A) 21 days after serving it, or
> > >
> > > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> >
> > (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Because Debtor had no right to file his second amended complaint under Rule 15(a)(1), Rule 15(a)(2) governs whether Debtor can file his second amended complaint.

"Pursuant to Fed.R.Civ.P. 15(a)[(2)], a court should freely give leave to amend a complaint 'when justice so requires.' However, leave to amend may be denied where the

amendment would be futile." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003)(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6).[20] *Kalasho v. Republic of Iraq*, No. 06–11030, 2010 WL 4062212, at *1 (E.D. Mich. Oct. 14, 2010)(explaining that "despite the general rule of liberality with which leave to file amended complaints is to be granted, the Sixth Circuit has held that when a proposed amended complaint would not survive a motion to dismiss, the court may properly deny the amendment as futile.")(citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir.1980) and *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376 (6th Cir.1993)); *United States ex rel. David Antoon, v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 894 (S.D. Ohio 2013).

Here, Debtor filed a second amended complaint to seek a determination that any debt owed to the Defendant based on the Citation is dischargeable, and therefore has been discharged. The Court concludes that allowing the second amended complaint for this purpose would be futile, because such claim could not survive a motion to dismiss for failure to state a claim.

The Court concludes that under 11 U.S.C. § 523(a)(7), all debts owed to Defendant based on the Citation, or based on any of the 2012 traffic tickets listed in Debtor's Schedule E, are nondischargeable. Section 523(a)(7) states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
> . . .

---

[20] Fed.R.Civ.P. 12(b)(6) applies in adversary proceedings under Fed.R.Bankr.P. 7012.

> **(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss,** other than a tax penalty--
>
>> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>>
>> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition[.]

11 U.S.C. § 523(a)(7)(emphasis added).

In the words of the statute, the Citation and the 2012 traffic-ticket debts at issue all are debts "for a fine [or] penalty" that are "payable to and for the benefit of a governmental unit," and they are "not compensation for actual pecuniary loss."

Many cases have held that debts for parking fines and traffic fines are nondischargeable under § 523(a)(7). *See, e.g.*, *City of Chicago v. Gallagher* (*In re Gallagher*), 71 B.R. 138, 139 (Bankr. N.D. Ill. 1987)(citing cases, and Ginsberg, Bankruptcy ¶ 11,310 (1985), and 3 *Collier on Bankruptcy* ¶ 523.17 (15th ed.1985))(holding parking violation fines to be nondischargeable under § 523(a)(7); and noting that "[i]n describing the type of debts which are nondischargeable under 11 U.S.C. § 523(a)(7) one commentor states: 'Actually, the types of debts most often excepted from discharge under this provision are fines and penalties such as traffic fines and parking tickets owed to local government units.'"); *Stevens v. Commercial Collection Serv., Inc.* (*In re Stevens*), 184 B.R. 584, 586 (Bankr. W.D. Wash. 1995)(holding that "traffic and parking fines" are nondischargeable under § 523(a)(7)); *City of Memphis v. Wilson* (*In re Wilson*), 31 B.R. 191, 192 (Bankr. W.D. Tenn. 1983)(holding that "a liability to pay a traffic fine is nondischargeable" under § 523(a)(7)); *see also In re Miller*, 511 B.R. 621, 631 (Bankr. W.D.

Mo. 2014)(citing as an example that a fine from a traffic ticket for reckless driving is nondischargeable under § 523(a)(7)). And there is no statutory or rule-based time limit for filing a complaint alleging that a debt is nondischargeable under § 523(a)(7). *See Carlisle Cnty. Fiscal Court v. Maxwell* (*In re Maxwell*), 229 B.R. 400, 401 (Bankr. W.D. Ky. 1998); Fed.R.Bankr.P. 4007(b)("A complaint other than under § 523(c) may be filed at any time.").

Because it is clear that any fine or penalty arising out of the Citation or the 2012 tickets is nondischargeable in Debtor's Chapter 7 case under § 523(a)(7), Debtor's claim of dischargeability could not survive a motion to dismiss. For this reason, the Court will deny Debtor leave to file the second amended complaint, and will strike the second amended complaint. Therefore, the operative complaint in this adversary proceeding is Debtor's first amended complaint, filed August 22, 2014.[21]

### B. Summary judgment standards

This Court has previously described the standards governing a motion for summary judgment, as follows:

> Fed.R.Civ.P. 56(a), applicable to bankruptcy adversary proceedings under Fed.R.Bankr.P. 7056, provides that a motion for summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149–50 (6th Cir.1995), the court elaborated:
>
> > The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule

---

[21] Docket # 15.

56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the [trier of fact]. Essentially, a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue.

If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by [the trier of fact]. In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party. However, if the evidence is insufficient to reasonably support a ... verdict in favor of the nonmoving party, the motion for summary judgment will be granted. Thus, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff.

...

Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson* [ *v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)], *Celotex* [ *Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)] and *Matsushita [ Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)], trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted.

> *Id.* (internal quotation marks and citations omitted). In determining
> whether the moving party has met its burden, a court must "believe
> the evidence of the nonmovant, and draw all justifiable inferences
> in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d
> 579, 586 (6th Cir.1999) (relying on *Russo v. City of Cincinnati*,
> 953 F.2d 1036, 1041–42 (6th Cir.1992)).

*McCallum v. Pixley* (*In re Pixley*), 456 B.R. 770, 774-75 (Bankr. E.D. Mich. 2011). Applying these standards, the Court concludes that Defendant is entitled to summary judgment on all claims in Debtor's first amended complaint.

### C. Defendant did not violate the automatic stay.

Upon the filing of a bankruptcy petition, 11 U.S.C. § 362(a) imposes:

> a stay, applicable to all entities, of [among other actions] . . .
>
> > (1) the commencement or continuation, including
> > the issuance or employment of process, of a judicial,
> > administrative, or other action or proceeding against
> > the debtor that was or could have been commenced
> > before the commencement of the case under this
> > title, or to recover a claim against the debtor that
> > arose before the commencement of the case under
> > this title;
> >
> > . . .
> >
> > (6) any act to collect, assess, or recover a claim
> > against the debtor that arose before the
> > commencement of the case under this title[.]

But the stay imposed by § 362(a) is subject to numerous exceptions. Section 362(b)(1) provides one such exception. It states that:

> (b) The filing of a petition . . . does not operate as a stay--
>
> > (1) under subsection (a) of this section, of the
> > commencement or continuation of a criminal action
> > or proceeding against the debtor[.]

11

There is a split of authority regarding whether § 362(b)(1) is an absolute exception to the automatic stay provisions of § 362(a). In *Michalski v. Coulson* (*In re Michalski*), 452 Fed. Appx. 656, 657-58 (6th Cir. 2011), the Sixth Circuit Court of Appeals explained:

> Courts are divided over whether § 362(b)(1) operates as an absolute exception to the protections of the automatic stay or whether this provision is inapplicable when the primary motivation of the criminal proceeding is to collect a pre-petition debt. *Compare In re Dovell*, 311 B.R. 492, 494 (Bankr.S.D.Ohio 2004) ("The exception to the automatic stay set forth in 11 U.S.C. § 362(b)(1) is inapplicable where the criminal proceeding is initiated for the purpose of collecting a debt."), *with In re Bartel*, 404 B.R. 584, 590 (B.A.P. 1st Cir.2009) ("[A] criminal proceeding is not subject to the automatic stay, even where it relates to debt collection or where the debtor alleges that the state is proceeding in bad faith.").

In *Michalski*, the Sixth Circuit noted that it had not yet decided the issue of whether § 362(b)(1) is an absolute exception to the automatic stay provisions of § 362(a), or whether § 362(b)(1) does not apply if the criminal prosecution is in bad faith or for the purpose of collecting a prepetition debt. *Id.* at 658. The court explained that in the case before it, it was not necessary for it to decide that issue, because "[b]ased on the record, there [was] insufficient evidence to support [the plaintiff's/debtor's] contention that the [Prosecutor's Office's] underlying motive for prosecuting him [for writing bad checks] was debt collection." *Id.* Based on this finding, the court held that under any view, § 362(b)(1) applied, so there was no violation of the automatic stay.

Although the Sixth Circuit has not yet decided the issue, this Court has done so previously — holding that § 362(b)(1) applies to the commencement or continuation of all criminal actions or proceedings, regardless of the motive or any bad faith of the prosecuting

12

party. *See In re Storozhenko*, 459 B.R. 697, 705-07 (Bankr. E.D. Mich. 2011)(relying in part on *Gruntz v. Cnty. of Los Angeles* (*In re Gruntz*), 202 F.3d 1074, 1085-87 (9th Cir. 2000)(en banc), and holding that § 362(b)(1) applies "even if [the] primary motive, or [the] sole motive" in pursuing a criminal proceeding is "to pressure or force the [d]ebtor into paying a pre-petition debt").

Applying the holding in *Storozhenko* compels the conclusion that the actions and/or omissions taken by Defendant post-petition (*i.e.*, issuing an arrest warrant for Debtor's failure to appear in court as summoned to answer a criminal charge; failing to cause that arrest warrant to be cancelled; and reporting the Debtor's violation of the Michigan Vehicle Code to the SOS, resulting in the SOS's further suspension of Debtor's operator's licence)[22] fall within the exception to the automatic stay provided by § 362(b)(1). All these actions were part of the continuation of a criminal proceeding against Debtor. Driving with a suspended license, one of the offenses for which Debtor was issued the Citation prepetition, is a criminal misdemeanor offense under Michigan law. *See* Mich. Comp. Laws Ann. § 257.904 (prohibiting a person whose operator's license has been suspended from driving a motor vehicle, and providing that a person who violates this statute is "guilty of a misdemeanor"). In addition, Debtor's failure to appear at the 30th District Court as required by the Citation itself was a criminal offense. Mich.

---

[22] Although Debtor asserts that Defendant suspended his driver's license, it was the SOS who suspended his driver's license, apparently after receiving an abstract listing the violations of the Michigan Vehicle Code that Debtor was cited for. The 30th District Court is required by statute "to keep a full record of every case in which a person is charged with or cited for a violation of the [the Michigan Vehicle Code]" and "to prepare and forward to the [SOS] an abstract of the court record[.]" *See* Mich. Comp. Laws Ann. § 257.732(1). Defendant's mere compliance with this state statute — merely forwarding information to the SOS as required by law — could not be viewed as a violation of the automatic stay provisions of § 362(a), even if the stay exception of § 362(b)(1) did not apply.

13

Comp. Laws Ann. § 257.321a(1) states:

> A person who fails to answer a citation, or a notice to appear in court for a violation reportable to the secretary of state under section 732 or a local ordinance substantially corresponding to a violation of a law of this state reportable to the secretary of state under section 732, or for any matter pending, or who fails to comply with an order or judgment of the court, including, but not limited to, paying all fines, costs, fees, and assessments, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $100.00, or both.

Because the actions Defendant took post-petition of which Debtor complains were taken to prosecute crimes allegedly committed by Debtor, such post-petition actions and proceedings were criminal actions or proceedings within the meaning of § 362(b)(1), and were excepted from the automatic stay. "The § 362(b)(1) exception is "consistent with the policy of making bankruptcy a means of offering relief to financially pressed debtors and not as providing a shelter from the consequences of criminal acts." *Bartel v. Walsh* (*In re Bartel*), 404 B.R. 584, 591 (B.A.P. 1st Cir. 2009).

**D. Defendant did not violate the discharge injunction.**

Just as the post-petition, pre-discharge actions against Debtor by Defendant did not violate the automatic stay under § 362(a), the continuation of those same actions or proceedings against Debtor after Debtor's discharge did not violate the discharge injunction of 11 U.S.C. § 524(a)(2).

Section 524(a)(2) provides:

> (a) A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

14

11 U.S.C. § 524(a)(2).

As one court has explained,

> The automatic stay under § 362(a) and the discharge injunction under § 524(a) operate in similar ways, with § 362(a) imposing a temporary injunction against certain actions during the pendency of the bankruptcy case and § 524(a) imposing a permanent injunction post-discharge. *In re Fucilo*, 2002 WL 1008935, at *5 (Bankr.S.D.N.Y. Jan. 24, 2002) ("Upon the filing of a bankruptcy case, the Code grants the debtor an automatic stay which is ultimately replaced by a permanent discharge injunction."). Accordingly, courts generally apply a similar analysis to the stay and the discharge injunction. *See, e.g., In re Michalski*, 452 F. App'x 656, 658 (6th Cir.2011); *Green v. Welsh*, 956 F.2d 30, 33–35 (2d Cir.1992).
> . . .
>
> **Neither the automatic stay nor the discharge injunction bars the commencement or continuation of a criminal investigation or prosecution by the state.** *See* 11 U.S.C. § 362(b)(1); *Kelly* [*v. Robinson*], 479 U.S. [36,] 47–48 [1986]; *Younger v. Harris*, 401 U.S. 37, 43–44 (1971); *In re Byrd*, 256 B.R. 246, 251 (Bankr.E.D.N.C.2000) ("a state may initiate or continue criminal prosecutions regardless of the pendency of a bankruptcy case, and further that it may do so even when the state's—or a complaining witness's—primary purpose is the collection of a debt.").
>
> Further, a debtor cannot utilize bankruptcy to discharge criminal liability, a criminal judgment, or a restitution order. *See Kelly*, 479 U.S. at 50 (noting "the established state of the law [is] that bankruptcy courts c[an] not discharge criminal judgments" and holding that criminal restitution obligations are nondischargeable under § 523(a)(7)); *U.S. v. Colasuonno*, 697 F.3d 164, 172–76 (2d Cir.2012) (bankruptcy filing does not affect probation revocation due to nonpayment of criminal restitution); *In re HBG Servicenter, Inc.*, 45 B.R. 668, 672 (Bankr.E.D.N.Y.1985) (noting "the clear congressional intent, reflected in the Code's legislative history and in the explicit language of the statute that bankruptcy not be a refuge from criminal proceedings"). Excluding state criminal proceedings from the stay and the discharge injunction reflects a "[r]espect for federalism"; *In re Pearce*, 400 B.R. 126, 132 (Bankr.N.D.Iowa 2009); and is consistent with "the longstanding

15

> public policy against federal court interference with state court proceedings", particularly criminal proceedings. *Younger*, 401 U.S. at 43; *Dovell v. The Guernsey Bank*, 373 B.R. 533, 538 (S.D.Ohio 2007); *Zervoudis v. Mass. State Lottery Comm'n*, 246 B.R. 470, 473–75 (Bankr.D.Mass.2000). Accordingly, bankruptcy courts should generally not interfere in a state's administration of its criminal justice system.

*Otten v. Majesty Used Cars, Inc.* (*In re Otten*), Adv. No. 12-8045, 2013 WL 1881736, at *6 & n.4-* 7(Bankr. E.D.N.Y. May 3, 2013)(emphasis added); *see also McCool v. Beneficial* (*In re McCool*); 446 B.R. 819, 822-23 (Bankr. N.D. Ohio 2010)(footnote omitted)(citation omitted)(explaining that "[i]f a discharge is granted, the protections formerly afforded a debtor by the automatic stay are replaced by the discharge injunction of 11 U.S.C. § 524(a)" and that "[w]hile there are some differences between the automatic stay and the discharge injunction, their overall effect is the same: to protect the debtor from unlawful collection activities, with the discharge injunction simply making permanent the temporary protections afforded by the automatic stay").

Defendant's post-discharge continuation of its criminal prosecution of Debtor did not violate the discharge injunction. In addition to the *Otten* and *McCool* cases cited above, *see* the Sixth Circuit's decision in *Michalski*, 452 Fed.Appx. at 658 (quoting *In re Daulton*, 966 F.2d 1025, 1028 (6th Cir. 1992)("However, '[t]he mere fact that a debt has been discharged in bankruptcy does not preclude a criminal action from proceeding based on the debtor's alleged criminal conduct in relation to the debt.'"). And any actions Defendant commenced or continued post-petition to collect any penalties or fines eventually assessed on account of the Citation would not violate the discharge injunction, because as stated in Part IV.A, such debts are nondischargeable under 11 U.S.C. § 523(a)(7), and therefore were not discharged.

16

## V. Conclusion

For the reasons stated in this opinion, the Court will enter an order striking Debtor's second amended complaint; granting summary judgment for Defendant; and dismissing all claims in Debtor's first amended complaint with prejudice. The order will deny Defendant's request for costs and attorney fees, however, because the Court is unable to find that Debtor, who is not represented by counsel, filed or prosecuted this adversary proceeding in bad faith or for an improper purpose, or that it was frivolous.

**Signed on February 6, 2015**  /s/ **Thomas J. Tucker**
**Thomas J. Tucker**
**United States Bankruptcy Judge**

17

14-04654-tjt    Doc 35    Filed 02/06/15    Entered 02/06/15 13:33:53    Page 17 of 17